UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CALEB NAIK,

                            Plaintiff,

    -against-                                              3:17-CV-0613 (LEK/DEP)

MODERN MARKETING CONCEPTS, INC.,

                            Defendants.

**MEMORANDUM-DECISION AND ORDER**

**I.**     **INTRODUCTION**

Plaintiff Caleb Naik has sued defendant Modern Marketing Concepts, Inc., alleging violations of Title VII of the Civil Rights Act and the Americans with Disabilities Act. Dkt. No. 15 ("Amended Complaint"). Before the Court is Defendant's motion to dismiss. Dkt. Nos. 23 ("Motion to Dismiss"), 23-6 ("Memorandum"). For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.

**II.**     **BACKGROUND**

    **A. Factual Background**

The following facts are taken from the allegations in the Amended Complaint, which are assumed to be true when deciding a motion to dismiss. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

Plaintiff is from India. Am. Compl. ¶¶ 11, 12. Starting in November 2001, Plaintiff performed custodial work for Defendant, including, but not limited to "cleaning bathrooms, cleaning and polishing floors, cleaning vents, replacing light bulbs and ballasts." Id. ¶¶ 13, 16. Plaintiff also did plumbing, painting, and construction work. Id. ¶ 14. He also obtained supplies

and set up conference rooms for company meetings. Id. ¶ 15. In addition to his "very physical" work, Plaintiff "over the years" supervised at least three part-time employees, including his wife and son, though Plaintiff was never promoted to a manager position. Id. ¶ 18. Plaintiff "would work routinely 6 days a week and overtime, often working 50 to 60 hours per week." Id. ¶ 17.

On "several occasions" Plaintiff was "praised" for his work by his supervisors and the company CEO. He received "only positive work reviews" during the period from November 2001 until July 2015, when he was injured on the job. After that injury and others that occurred between July and December 2015, Plaintiff requested accommodations and a reduced workload. Id. ¶ 21.

  1. *Injuries and Employer Response*

On July 7, 2015, Plaintiff fell at work and injured his left wrist. Id. ¶ 23. He went to the hospital and was given a splint and medication. Id. ¶ 24. He returned to work the next day, informed Defendant of the injury and of "his need for work restrictions and accommodations" that would "lessen his need to perform manual labor requiring the use of his hands, wrists, and arms." Id. ¶¶ 25–26. Plaintiff's supervisor, Jerry Kenhurt, "consented" to the accommodations, allowing the Plaintiff "to, for instance, not have to polish the floors or clean the bathrooms as much." Id. ¶ 27. Plaintiff then "tried to do less physical work [so] as to not strain his hands, wrists, and arms as much." Id. ¶ 28.

On July 15, 2015, Plaintiff fell again, this time injuring his right shoulder. Id. ¶ 29. Plaintiff again returned to work, and informed Kenhurt "that he needed additional accommodations" because of the wrist and shoulder injuries. Id. ¶ 30.

In late August 2015, Plaintiff traveled on vacation to India. His shoulder injury "was so painful" during that trip that Plaintiff went to a doctor, who prescribed pain medication and told Plaintiff to follow up with his primary care doctor. Id. ¶ 33. Upon his return to work, Plaintiff informed Kenhurt of the continued pain. Id. ¶ 34. Around this time, Defendant reduced Plaintiff's work hours to "closer to 40 hours a week." Id. ¶ 35.

In September 2015, Plaintiff was injured again after another employee opened a door, hitting Plaintiff in the face, breaking some of his teeth. Id. ¶¶ 36–37.

In October 2015, Plaintiff was referred to an opthalmologist for problems with his eyes. Id. ¶ 39. Plaintiff alleges that Defendant caused these eye problems by changing to "more hazardous and caustic cleaning supplies" in 2013. Id. ¶ 41. Plaintiff "developed eyesight issues, tearing eyes and general discomfort in both his eyes, breathing difficulties, and headaches." Id. ¶ 41. Plaintiff complained to his supervisor on several occasions prior to October 2015 about the fumes from the new cleaning supplies. Id. ¶ 40. Plaintiff requested either that the cleaning supplies be changed back or "for help with his issues," but "he was ignored." Id. ¶ 42. Plaintiff's eye and breathing problems "continued to get worse." Id. ¶ 43.

While Kenhurt ostensibly "granted" Plaintiff's "requests for accommodations or allowed the Plaintiff to spread his work out to other employees," Defendant, over time, "took away all of Plaintiff's duties." Id. ¶ 44. For example, for fourteen years, Plaintiff had a desk and computer to track customer service complaints and maintenance requests. Id. ¶ 45. However, around the time Plaintiff first informed Defendant of his injuries, Defendant removed the work computer and desk, removing Plaintiff's ability to perform less physically demanding work. Id. ¶ 47.

On or about December 9, 2015, Plaintiff had a follow-up appointment with his physician regarding his shoulder and wrist. Id. ¶¶ 64–65. The physician directed Plaintiff "not to return to work until he was seen by" an orthopedic surgeon. Id. The physician also provided Plaintiff with a note saying he could not work. Id. ¶ 66. The next day, on December 10, 2015, Plaintiff gave the note to Kenhurt, who said he would forward it to Defendant's human resources department. Id. ¶ 67. Human resources representative Becky Bernhardt later contacted Plaintiff to schedule a meeting. Id. ¶ 68. At that December 11 meeting, Bernhardt and another human resources representative, Stephanie Reef, without providing a reason, informed Plaintiff that "he was terminated from his job." Id. ¶ 70.

### 2. Harassment

Plaintiff, who is "dark skinned, short, overweight," and speaks with a "profound" accent, endured "some form of snide remarks or kidding from coworkers over his 14 years" working for Defendant. Id. ¶¶ 49–50. But in September/October 2015, as Plaintiff's "injuries caused him to work less" and he took, with Kenhurt's permission, more breaks, Defendant's employees "increased their verbal harassment." Id. ¶¶ 51–52. Coworkers "would come up to him and tell him that he should be taking a break, he needed to work more, why are you being lazy and things of that nature." Id. ¶ 52. In addition, they would "make fun of his accent" and "mimic his accent." Id. ¶ 53. They would also comment on his weight, saying "things like 'oh baby, look at the baby'" and ask him how many babies he had, since Indian people "had a lot of babies." Id. ¶ 53.

Plaintiff complained about this harassment to Kenhurt, who "referred" Plaintiff to the human resources department. Id. ¶ 55. The human resources department "did take some action and investigated the complaints," but "the harassment continued." Id. ¶ 56.

### 3. Promotion Decisions

After "a few months" on a reduced work schedule (resulting in less take-home pay), Plaintiff sought a promotion and/or increased salary. Id. ¶¶ 58–61. Specifically, he discussed with "board member and financial officer" Kerin Flannery his desire to obtain either an increase in hourly pay (from $11.79 to $16.69) or a promotion to a managerial position. Id. ¶ 61. In his entire time working for Defendant, Plaintiff was "never considered" for a managerial position, and was passed over each time in favor of "someone Caucasian" until Kenhurt became his manager in July 2015. Id. ¶ 62.

### B. Procedural Background

On August 25, 2016, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") and United States Equal Employment Opportunity Commission ("EEOC") alleging unlawful employment discrimination on the basis of disability. Id. ¶ 73; Dkt. No. 23-3 ("Administrative Complaint"). After an investigation, the NYSDHR, on February 23, 2017, dismissed Plaintiff's Administrative Complaint on February 23, 2017. Dkt. No. 23-4 ("NYSDHR Order"). The EEOC then reviewed Plaintiff's action, and on March 15, 2017 issued a dismissal and right-to-sue letter. Dkt. No. 15-1 ("Right to Sue Letter").

On June 5, 2017, Plaintiff, proceeding pro se, filed a complaint in this Court, which, liberally construed, asserted claims for disability discrimination, failure to accommodate, and hostile work environment based upon disability pursuant to the Americans with Disabilities Act.

5

Dkt. No. 1 ("Complaint"). He also brought a claim pursuant to 28 USC § 1983. Id. Upon the recommendation of Magistrate Judge David E. Peebles, Dkt. No. 4 ("Report-Recommendation"), this Court dismissed the Complaint without prejudice on the basis that Plaintiff failed to allege (1) any state action as required for a § 1983 claim; (2) that he received an EEOC right-to-sue letter; and (3) facts plausibly suggesting that he suffered a disability under the ADA. R. & R. at 10; Dkt. No. 9 ("December 2017 Order").

On February 2, 2018, Plaintiff, now represented by counsel, filed the Amended Complaint. Am. Compl. Defendant has moved for dismissal. Mot. to Dismiss. Plaintiff has since responded, Dkt. No. 26 ("Response"), and Defendant has filed a reply, Dkt. No. 27 ("Reply").

### III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In assessing whether this standard has been met, courts take "all factual allegations contained in the complaint" as true, Twombly, 550 U.S. at 572, and "draw all inferences in the light most favorable to the non-moving party," In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted).

On a motion to dismiss, the Court is limited to reviewing the complaint, any documents attached to the complaint or incorporated into it by reference, any documents that are "integral" to the plaintiff's allegations, even if not explicitly incorporated by reference, and facts of which

the Court may take judicial notice. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Thomas v. Goord, 215 F. App'x 51, 52 (2d Cir. 2007).

The doctrine of judicial notice is governed by Federal Rule of Evidence 201, which provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In the motion to dismiss context, "a court should generally take judicial notice 'to determine what statements [the documents] contain . . . not for the truth of the matters asserted.'" Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

## IV. DISCUSSION

### A. Exhaustion

Prior to pursuing a Title VII claim in federal court, a plaintiff must first file a complaint with the EEOC or an analogous state agency such as the NYSDHR. Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 71 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-5). Claims not raised in an EEOC complaint, however, may be brought in federal court if they are "reasonably related" to the claim filed with the agency. Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006).

This Circuit has recognized that "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359–60 (2d Cir.2001). In this inquiry, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving."

Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003). When assessing exhaustion of claims based on two different types of discrimination—for example, discrimination based on disability and race—the central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." Id. at 202.

### 1. Race-Based Discrimination Claims

In the Administrative Complaint, Plaintiff raised only claims relating to his alleged disability. Admin. Compl. Indeed, the Administrative Complaint only makes reference to Plaintiff's injuries to his wrist, shoulder, and eyes, as well as the subsequent termination of Plaintiff's employment. There is no discussion in the Administrative Complaint of anything regarding mistreatment on the basis of national origin, race, or creed.

Instructive is the decision in Young v. Lord & Taylor, LLC, 937 F. Supp. 2d 346 (E.D.N.Y. 2013). In Young, the plaintiff filed a complaint in federal court alleging disability, age, race, ethnicity, and national origin discrimination in violation of the ADA and Title VII. However, in her preceding NYSDHR complaint, she only alleged disability discrimination. Id. at 353. Accordingly, the Young court found that the plaintiff had failed to exhaust her administrative remedies with respect to her age, race, and national origin discrimination claims because "[t]here [was] nothing in her NYSDHR Complaint that allege[d] age, race, ethnicity or national origin discrimination, and therefore no reason that those claims of discrimination would be investigated." Id.; see also Acheampong v. N.Y.C. Health & Hosps. Corp., No. 11-CV-9205, 2015 WL 1333242, at *10 (S.D.N.Y. Mar. 25, 2015) ("Plaintiff's race, color, national origin and age discrimination claims are not reasonably related to the disability claims asserted in his Intake Questionnaire and Charge.").

Similarly, here, there is nothing in the Administrative Complaint that would have given the EEOC or the NYSDHR reason to investigate discrimination related to Plaintiff's national origin, race, or creed. Plaintiff seems to contend that boilerplate language referring to Title VII in the Right to Sue Letter and notarization form that accompanied the Administrative Complaint satisfies the exhaustion requirement. Dkt. No. 26 ("Naik Affidavit") ¶¶ 20–21; Admin. Compl. at 6; Right to Sue Letter. However, this argument is without merit. Whether Plaintiff properly exhausted administrative remedies depends on the claims actually detailed in the Administrative Complaint, not boilerplate language included in all administrative complaints.

Plaintiff's Title VII claims of discrimination and hostile work environment on the basis of national origin, race, and creed therefore have not been exhausted, and these claims are dismissed. As the ADA's 300-day limitations period for filing an administrative claim, 42 U.S.C. § 12117, has passed, the Court dismisses these claims with prejudice.

### 2. Failure to Promote Claim

Plaintiff's failure to promote claim appears to be based on discrimination on the basis of race and disability. Am. Compl. ¶¶ 98–102. However, none of Plaintiff's failure to promote allegations appear anywhere in the Administrative Complaint. Admin. Compl. It is unlikely, therefore, that the NYSDHR's scope of investigation would have included Plaintiff's failure to promote claim. Thus, because Plaintiff's failure to promote claim is not reasonably related to any of the claims or allegations included in the Administrative Complaint, Plaintiff failed to exhaust his failure to promote claim. The Court therefore dismisses Plaintiff's failure to promote claim. See, e.g., Elhany v. Shinseki, No. 10-CV-3192, 2012 WL 2122178, at *14 (E.D.N.Y. June 12, 2012) (finding failure to promote unexhausted where administrative complaint asserted only

9

discriminatory termination and did not mention any possible promotions). As the ADA's 300-day limitations period for filing an administrative claim, § 12117, has passed, the Court dismisses this claim with prejudice.

### 3. Hostile Work Environment Claim

The Plaintiff is inexact in his Amended Complaint about whether his claims of hostile work environment claim is rooted in discrimination based on race, disability, or some combination of the two. To the extent the hostile work environment claim is based on race, since race-based discrimination was not raised in nor reasonably related to any allegations included in the Administrative Complaint, any race-based hostile work environment claim is unexhausted and must therefore be dismissed.

To the extent Plaintiff alleges hostile work environment based on disability, such ADA claims "are evaluated under the same standards as hostile work environment claims under Title VII," Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).[1] A hostile work environment arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). Because this kind of violation involves "repeated conduct," the Second Circuit has held than an administrative

---

[1] The Second Circuit Court of Appeals has not yet decided whether the ADA provides a basis for a hostile work environment, Farina v. Branford Bd. of Educ., 458 F. App'x 13, 17 (2d Cir. 2011), but several other circuits have recognized such claims, see, e.g., Shaver v. Indep. Stave Co., 350 F.3d 716, 719–20 (8th Cir.2003); Fox v. Gen. Motors Corp., 247 F.3d 169, 175–76 (4th Cir. 2001); Flowers v. S. Reg'l Physician Servs., Inc., 247 F.3d 229, 232–35 (5th Cir. 2001). The Court here assumes, *arguendo*, that the ADA provides a basis for a hostile work environment claim.

complaint does not "reasonably relate" to a hostile work environment claim when the administrative complaint details "nothing more than a single act of physical and verbal abuse." Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008). Here, the Administrative Complaint makes only one mention of physical or verbal abuse—namely, Plaintiff's allegation that Kenhut "mocked" Plaintiff for his request for different cleaning products because of his eye problems. Admin. Compl. ¶¶ 11–12. As a result, the factual allegations made in the Administrative Complaint cannot "be fairly read to encompass" Plaintiff's hostile work environment claim. Mathirampuzha, 548 F.3d at 77. Plaintiff's hostile work environment claim is therefore unexhausted and must be dismissed. As the ADA's 300-day limitations period for filing an administrative claim, § 12117, has passed, the Court dismisses this claim with prejudice.

### 4. Retaliation Claim

In order to establish a prima facie case of retaliation, a plaintiff must show that the alleged retaliatory action was in response to the plaintiff "engag[ing] in an activity protected by the ADA." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). Requesting an accommodation is one form of protected activity. Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir. 2002).

Plaintiff alleged in his Administrative Complaint that he sought the accommodation of "a reasonable period of time off" because of his medical issues, and Defendant the next day terminated his employment in response to this request for accommodation. Admin. Compl. ¶¶ 15–19. Accordingly, the Administrative Complaint provided sufficient notice to the NYSDHR to investigate possible retaliation. This retaliation claim is therefore administratively exhausted and can be addressed by the Court.

### 5. *Failure to Accommodate and Termination Based on Disability Claims*

Plaintiff's last two claims, for failure to accommodate and termination based on disability, are clearly raised in his Administrative Complaint, Admin. Compl. ¶¶ 11–19, and are therefore administratively exhausted and properly before this Court.

**B. Merits of Exhausted Claims**

### 1. *Retaliation*

Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases. Weixel, 287 F.3d at 148. In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. See Cifra, 252 F.3d at 216.

With respect to the first element, protected activity typically "refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000). However, requesting a "reasonable accommodation of [a] disability" also constitutes protected activity. Weixel, 287 F.3d at 149. Plaintiff engaged in an activity protected by the ADA by making a request for an accommodation—namely, a leave of absence. The Second Circuit has not definitively determined whether a request for leave for leave for medical treatment, like that requested by Plaintiff, constitutes a reasonable accommodation. However, the Second Circuit *has* recognized that "[m]ost other circuits and the Equal Employment Opportunity Commission have concluded that, in some circumstances, an unpaid leave of absence can be a reasonable accommodation under the ADA." Graves v. Finch Pruyn &

Co., 457 F.3d 181, 185 n.5 (2d Cir. 2006) (collecting cases) ("Graves I"); see also 29 C.F.R. Pt. 1630, App. § 1630.2(o) (providing that a reasonable accommodation may include "unpaid leave for necessary treatment"). This Court, like other district courts in the Second Circuit, finds that a request for leave of absence can be a reasonable accommodation. Powers v. Polygram Holding, Inc., 40 F. Supp. 2d 195, 201 (S.D.N.Y. 1999); Reddick v. Niagara Mohawk Power Co., No. 08-CV-995, 2010 WL 5185098, at *6 (N.D.N.Y. Dec. 10, 2010); Bateman v. Project Hosp., Inc., No. 07-CV-2085, 2009 WL 3232856, at *12 (E.D.N.Y. Sep. 30, 2009).

A request for leave must still be "reasonable" however, to count as protected activity. Whether a request for leave is "reasonable" will depend in part on the length of the leave requested. Powers, 40 F. Supp. 2d at 199–201. The Amended Complaint is somewhat unclear about the exact length of leave requested. Plaintiff states that he "was directed by his physician not to work until he was seen by the orthopedic surgeon" and then provided his employer with a note "saying that he could not work." Am. Compl. ¶¶ 65–67. Drawing "all inferences in the light most favorable to the non-moving party," In re NYSE Specialists Sec. Litig., 503 F.3d at 95, the Court infers that Plaintiff's request for leave was for the finite period until he could be seen by an orthopedic surgeon. Unlike in Mitchell v. Washingtonville Central School District, in which the Second Circuit held that an employee's request for indefinite leave of absence was not a reasonable accommodation when there was no expectation the employee would be able to return to work afterward, 190 F.3d 1, 9 (2d Cir. 1999), the leave requested here was finite, until an appointment with an orthopedic surgeon. The Court declines to find as a matter of law that such a request constitutes an unreasonable accommodation. Therefore, the Court finds that Plaintiff has plausibly alleged the first element of a retaliation claim. See Sobhi v. Sociedad Textil Lonia

13

Corp., No. 13-CV-8073, 2014 WL 7474338, at *5 (S.D.N.Y. Dec. 30, 2014) (finding request for finite period of leave constitutes a request for a reasonable accommodation).

The second required element, that the employer be aware of the protected activity, is also satisfied here since Plaintiff made the accommodation request to supervisor Kenhurt and Defendant's human resources department. Am. Compl. ¶¶ 67–70.

With respect to the third element, the Second Circuit has "defined adverse employment action broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (internal quotation omitted). Here, the termination of Plaintiff's employment clearly qualifies as an adverse employment action. Am. Compl. ¶ 70.

With respect to the fourth element, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by [the defendant]." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). Here, the temporal proximity between Plaintiff's request for leave and his termination—one day—is sufficient to permit an inference of causation.

Plaintiff has therefore plausibly alleged a retaliation claim, which survives the Motion to Dismiss.

*2. Failure to Accommodate Claims*

A plaintiff can state a claim for discrimination under the ADA based upon his employer's failure to accommodate his disability by alleging facts showing that (1) his employer is subject to

the ADA; (2) he is an individual with a disability within the meaning of the ADA; (3) with or without reasonable accommodation, he could perform the essential functions of the job; and (4) the employer had notice of the plaintiff's disability and failed to provide such accommodation. Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995).

Defendant challenges only the "disability" element of Plaintiff's failure to accommodate claim. Under the ADA, a disability means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." EEOC v. J.B. Hunt Transp., Inc., 321 F.3d 69, 74 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2)). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3).

The ADA's "definition of disability [is to be] construed in favor of broad coverage." Id. § 12102(4)(A). In particular, the requirement that a disability "substantially limit[ ]" the performance of one or more major life activities "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(I). "[M]ajor life activities include . . . performing manual tasks, seeing, . . . lifting, . . . breathing . . . and working,"§ 12102(2)(A), and "an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," Parada v. Banco Indus. de Venezuela, C.A., 753 F.3d 62, 68 n.3 (2d Cir.2014) (quoting § 1630.2(j)(1)(ii)).

Plaintiff argues that he requested and was denied an accommodation in two instances: when he requested leave just prior to his termination, and when he asked to use different cleaning products. Defendant moves to dismiss the failure to accommodate claims on the basis that Plaintiff failed to allege that any of his injuries "substantially limited his ability to perform major life activities," and therefore failed to plausibly allege a disability. Mem. at 10–11; Reply at 7–9. In addition, Defendant argues that Plaintiff did not even request an accommodation when he submitted his doctor's note requesting leave. Mem. at 11.

### a. Request for Leave

First, as discussed above, the Court finds that a request for leave is indeed a request for a reasonable accommodation. See Powers, 40 F. Supp. 2d at 199–201.

As to whether Plaintiff has adequately alleged a "disability," the Court finds that he has in the case of the wrist and shoulder injuries that prompted his request for medical leave. While Plaintiff does not go into much detail about how those impairments affected his life activities, he does allege that his wrist and shoulder injuries prompted a note from his physician that "[Plaintiff] could not work." Am. Compl. ¶ 66. Plaintiff further alleges that he received wrist splints, his "shoulder injury was so painful," he had to take "more breaks," and had to do "less physical work." Id. ¶¶ 23, 28, 29, 32, 52. The Court, drawing reasonable inferences in the light most favorable to Plaintiff, and following the ADA's directive that the "definition of disability [is to be] construed in favor of broad coverage," finds that these allegations plausibly allege a disability, since Plaintiff's shoulder and wrist injuries substantially limited two major life activities enumerated in the ADA—his ability to perform manual tasks and his ability to work. See Negron v. City of New York, No. 10-cv-2757, 2011 WL 4737068, at *12 (E.D.N.Y. Sept.

14, 2011), adopted by 2011 WL 4729754 (Oct. 6, 2011) (finding a plausibly-alleged disability where employee alleged that pain and inflammation in her hand prevented her from working at all, and required a medical leave).

Defendant does not challenge the remaining elements of Plaintiff's failure to accommodate claim, and upon review of the record, the Court finds these other elements to have been plausibly alleged.

Accordingly, giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff has plausibly alleged a failure to accommodate claim with regards to his leave request for his shoulder and wrist injuries.

### b. Request for Cleaning Products Change

As for Plaintiff's other requested accommodation, a change in cleaning products, Plaintiff has not plausibly alleged a failure to accommodate claim. To make out a failure to accommodate claim, Plaintiff must allege a disability to be accommodated. However, the Amended Complaint's mention of "eyesight issues, tearing eyes, general discomfort in both eyes, his breathing and . . . headaches," Am. Compl. ¶ 41, does not plausibly allege the existence of a disability. While breathing and seeing are "major life activities," § 12102(2)(A), Plaintiff fails, with this general language, to plausibly allege these activities have been "substantially limited." See Gorbea v. Verizon N.Y., Inc., No. 11–CV–3758, 2014 WL 917198, at *8 (E.D.N.Y. Mar. 10, 2014) (finding that the plaintiff was not disabled because she did not show that her breathing difficulties were "substantial"). Nor does Plaintiff suggest that Defendant perceived Plaintiff as disabled because of these eyesight and breathing issues. Since Plaintiff has not plausibly alleged

17

this disability, he cannot maintain a failure to accommodate claim based on it, meaning this claim must be dismissed.

### 3. Wrongful Termination Based on Disability

Title I of the ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." § 12112(a). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

The first three elements of the prima facie case of discrimination are the same as those for the failure to accommodate claim, and are plausibly alleged, for the same reasons already discussed above. As for the last element of an ADA discrimination claim, termination is an adverse employment action, and the immediate temporal proximity between Plaintiff's request for leave for his disability and his termination is sufficient to permit an inference of causation. See Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015).

Accordingly, the Court finds that Plaintiff has plausibly alleged wrongful termination based on disability in violation of the ADA.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 23) is **GRANTED in part and DENIED in part** as follows:

Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's Title VII claims, race-based claims, failure to promote claim, and hostile work environment claim. These claims are **DISMISSED with prejudice**;

Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's claim that Defendant failed to provide the accommodation of different cleaning supplies, and this claim is **DISMISSED without prejudice**.

Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's retaliation claim, failure to accommodate claim for not permitting medical leave, and wrongful termination based on disability; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in this action.

**IT IS SO ORDERED.**

DATED:  August 27, 2018
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge